```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - -  X
                                :
UNITED STATES OF AMERICA        :   INDICTMENT
                                :
        - v. -                  :   18 Cr.
                                :
JAMES MOORE,                    :
                                :
        Defendant.              :
                                :
- - - - - - - - - - - - - - -  X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 18 2018

18 CRIM 759

JUDGE BERMAN

Count One
(Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

**Background**

1. JAMES MOORE, the defendant, is a citizen of the United Kingdom.

2. Renwick Haddow ("Haddow") is a citizen of the United Kingdom who principally resided in New York, New York from at least in or about October 2014 through June 2017.

3. In or about November 2008, the Companies Investigation Branch of the Insolvency Service of the United Kingdom ("CIB"), an agency responsible for investigating serious corporate abuse in the United Kingdom (the "U.K."), disqualified Haddow from serving as a director of any company registered in the U.K. for a period of eight years, through about November 2016. This disqualification was premised on Haddow's conduct as a director of a company whose investors lost all or substantially all of their investments.

As part of Haddow's disqualification, Haddow consented to a schedule of unfit conduct that stated, in part and substance, that Haddow caused or allowed the now-insolvent company to make various misleading statements about its financial position and prospects. The U.K. government published an online press release with respect to Haddow's disqualification, including the schedule of his unfit conduct.

4. In or about July 2013, the U.K.'s Financial Conduct Authority ("FCA") brought a civil action against Haddow and others for allegedly running various unauthorized collective investment schemes, including a scheme involving African land ventures, that raised £16.9 million in funds through, among other things, misleading statements to investors.

5. In February 2014, the High Court of Justice, Chancery Division, ruled, in substance, that the schemes at issue were in fact unauthorized collective investment schemes. The ruling was publicized in the British press.

6. In March 2015, the British Court of Appeal dismissed the appeals filed by Haddow and others. The ruling was publicized online.

7. At all times relevant to this Indictment, Bar Works, Inc. ("Bar Works") was a Delaware corporation that was principally owned and controlled by Haddow. Bar Works's principal place of business was in New York, New York. Bar Works was incorporated on

or about July 24, 2015. On or about July 29, 2015, Haddow bought all 20 million shares of Bar Works for $2,000.

8. At all times relevant to this Indictment, Haddow operated as the principal executive of Bar Works. Among other things, Haddow controlled the finances of Bar Works, including revenue generated by Bar Works's operations and money raised from Bar Works investors, and was responsible for the operations and growth of Bar Works throughout New York and the world.

9. At all times relevant to this Indictment, JAMES MOORE, the defendant, recruited agents to sell investments in Bar Works and, in exchange, MOORE received commissions.

10. According to Bar Works offering materials, Bar Works purported to be a company that adapted former restaurant, bar premises, and other locations into co-working spaces with "workspaces" for rent to the public in exchange for a membership fee.

11. In 2015 and 2016, Haddow opened at least four bank accounts in Bar Works's name, designating Haddow as the sole authorized signatory on each account through account opening forms or resolutions. The opening forms for one such account represented that Haddow owned 100% of Bar Works.

12. In February 2016, Haddow signed Bar Works's annual Delaware franchise tax report, listing Haddow as president of Bar Works and its only stated officer and director.

3

13. From approximately October 2015 through at least April 2017, Bar Works raised funds from investors, among other ways, by selling "leases" coupled with "sub-leases" on individual workspaces in different Bar Works locations, including at least six locations in New York City.

14. To purchase a lease on a single workspace, investors paid a purchase price generally ranging from $22,000 to $30,000. Investors would then generally "sub-lease" their workspaces to a Bar Works affiliate.

15. Bar Works or its affiliate typically agreed to pay each investor at least a designated monthly "rental" fee for the lease's duration, generally between 14% and 16% of the investor's investment, regardless of whether a paying customer could be obtained for the investor's workspaces — that is, whether Bar Works received some or no revenue on the relevant workspaces.

16. From at least about October 2015 through June 2017, Bar Works raised over $36 million from investors.

17. At least some investors wired money from outside of the state of New York into a Bar Works bank account in New York, New York.

18. As of in or about April 2017, Bar Works systematically stopped making payments to investors.

### The Scheme to Defraud Bar Works Investors

19. From in or about 2015 through at least in or about 2016, JAMES MOORE, the defendant, solicited, and assisted Haddow in soliciting, investments in Bar Works leases through the use of material misrepresentations about, among other things, the management and operations of Bar Works.

20. Bar Works provided potential investors with various offering documents, the content and dissemination of which Haddow controlled, with input from JAMES MOORE, the defendant.

21. The Bar Works offering materials omitted Haddow's name entirely.

22. Instead, various Bar Works offering materials and leases distributed between at least about September 2015 and January 2017 identified Bar Works's CEO as "Jonathan Black."

23. As JAMES MOORE, the defendant, knew, "Jonathan Black" was a fictitious identity adopted by Haddow to conceal his involvement in Bar Works as its incorporator and president.

24. As JAMES MOORE, the defendant, and Haddow well knew, the FCA's civil action against Haddow for operating unauthorized investment schemes was well publicized as of 2015. MOORE and Haddow also knew that knowledge of Haddow's control over Bar Works would be material to investors in Bar Works.

25. JAMES MOORE, the defendant, and Haddow recruited agents to sell workspace leases in Bar Works and provided them with

5

offering documents and other information that concealed Haddow's control and ownership interests in Bar Works, and affirmatively misrepresented that the non-existent individual named "Jonathan Black" was the CEO of Bar Works.

26. JAMES MOORE, the defendant, obtained over $1.4 million in exchange for his participation in this scheme.

### Statutory Allegations

27. From at least in or about 2015 through at least in or about 2016, in the Southern District of New York and elsewhere, JAMES MOORE, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

28. It was a part and object of the conspiracy that JAMES MOORE, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

### Count Two
### (Wire Fraud)

The Grand Jury further charges:

29. The allegations contained in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

30. From at least in or about 2015 through at least in or about 2016, in the Southern District of New York and elsewhere, JAMES MOORE, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, MOORE engaged in a scheme to defraud investors by soliciting funds for investments in a company called Bar Works Inc. and related entities through material misrepresentations, which scheme involved the use of wires.

(Title 18, United States Code, Sections 1343 and 2.)

### FORFEITURE ALLEGATION

31. As a result of committing one or both of the offenses alleged in Count One and Count Two of this Indictment, JAMES MOORE,

7

the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from, proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

32. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853 and 28 U.S.C. § 2461, to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853, and
Title 28, United States Code, Section 2461.)

_____            _____
FOREPERSON                                 GEOFFREY S. BERMAN
                                           United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

v.

JAMES MOORE,

Defendant.

---

**INDICTMENT**

18 Cr.

(18 U.S.C. §§ 1343, 1349, and 2.)

GEOFFREY S. BERMAN
United States Attorney

_____
Foreperson

---

10/18/18  Filed Indictment
Case assigned to Judge Berman   USMJ Gorenstein   MR