18cr759

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/24/19

TRULINCS 14532104 - MOORE, JAMES - Unit: NYM-K-S

----

FROM: 14532104
TO:
SUBJECT: URGENT REQUEST
DATE: 06/18/2019 06:08:26 PM



RECEIVED
JUN 2 1 2019
CHAMBERS OF
RICHARD M. BERMAN
U.S.D.J.

**MEMO ENDORSED**

The Hon Judge R Berman
Court Room 17B
United States Courthouse
500 Pearl Street
New York
NY 10007

6/18/19

United States vs. James Moore, 18-cr-759 (RMB) presided over by Your Honor, June 3rd - 7th, 2019.

Dear Judge Berman

After seeing for yourself the charade presented by Mr. Garvin under the thinly veiled guise of a 'criminal defense' at my trial I am asking Your Honor to make an order for my immediate release.

Whilst it may be 'theoretically possible' for a guilty person to 'bribe his own lawyer' to ensure that he is found guilty, I am certain that Your Honor will agree that it is highly improbable that I or any other sane person would do so.

Other than the obvious point of Mr. Garvin producing none of the 12-20 witnesses I had listed and requested he call in order to help exonerate me of the crimes I was charged with (and for whom I had prepared pages and pages of questions to be used by Mr. Garvin) Mr. Garvin surely failed to meet even the lowest standards of any junior defense lawyer, never mind that of a 37 year trial veteran.

He failed to refute even the most fundamental and pivotal factual statements presented by Mr. Vainberg and Mr. Bell on behalf of the Govt as Your Honor would have been able to see from the documents. His obvious and deliberate efforts to obscure or pervert the truth at every opportunity are surely inexcusable from a licensed professional and incapable of being interpreted as anything other than an obvious and deliberate effort to ensure that I was found guilty.

Mr. Vainberg almost taunted him to challenge things at times by waving the obvious under his nose but Mr. Garvin appeared un - swayable. "Mr. Moore then started OurSpace" was a misstatement that I may have expected from the Govt as a 'comment expecting to be refuted'. Mr. Vainberg and Mr. Bell were saved the trouble by Mr. Garvin as he seemed to be in full flow doing their job for them, making the wrongful and damaging statement(s) against me all by himself. He managed to successfully ignore somewhere between 100-150 post it notes I wrote for him asking him to refute specific points.

Mr. Garvin failed to correct even the most basic 'factual points' wrongly raised, such as the fact that I did not receive $1.5-6M but actually received a salary of $85,000. Universal Voicetech Inc, a company with a separate legal personality, received the money. It was not 'mine'. I did not control it and had no authority within it or over it. My wife has owned the company for around 20 years. I had received salary payments from it for at least 3 years prior to any involvement with BarWorks, these points could have been easily proven and verified by the advisor who dealt with the company on behalf of my wife and also prepared our tax returns. I had requested that this professional advisor, Mr. Carlos Samlut be subpoenaed along with my tax returns and those of the company, Universal Voicetech Inc be submitted so that these important points could have been clarified for the Court by Mr. Samlut. Mr. Garvin failed to do so.

Mr. Haddow in an MOi disclosed by the Govt had stated that 'Mr. Storey was the route to UPG' and also that I had said to him 'It's Storey you have to convince'. Your Honor will immediately recognise that what these two points imply and should have highlighted, that Mr. Storey the very person who as it is now recognised had done the 'fake due diligence' on the Lake Austin project in order to ensure that my UK company 'Instant Access Properties' offered it for sale, was also asked to do due diligence regarding Mr. Haddow and BarWorks at the time. (Mr. Storey was identified by Judge Justice Morgan as 'the person without whom the arrangements in Florida would not have been possible') Mr. Storey's role in the Lake Austin fraud was unknown to me at the time of 'BarWorks' having only been exposed to me by UK High Court proceedings against Instant Access Properties in late 2017 and via the Judgment of UK High Court Judge, Hon Judge Justice Morgan, in March 2018. This was another document that I felt was extremely important for the Court to be made aware of and so had asked Mr. Garvin to submit, another request he seemingly ignored.

TRULINCS 14532104 - MOORE, JAMES - Unit: NYM-K-S

---

It would likely also become clear to Your Honor from Mr. Haddow's statements that Mr. Storey was the party responsible for 'introducing and assembling the components necessary' to enable the BarWorks fraud to have taken place, at least at the scale with which it was executed. (Storey being the person who 'enabled' the sale of BarWorks by virtue of his fake due diligence in the first place, and subsequently 'connected' BarWorks to United Property Group, a company with which he had and has an ongoing relationship with, something else that he kept concealed from me at the time.) Also I may not have been able to 'prove' that Storey and Quayle (the introducer of Haddow to me at a time that broadly coincided with the commencement of the FDIC investigation into Lake Austin) were connected but it is now clear to me that they were.

Mr. Garvin subsequently also passed up the opportunity to dispel the original accusations made against me (according to Mr. Rask & Mr. Vainberg) that I was some kind of serial ponzi operator with a pattern of similar frauds. Mr. Madsen was co owner of the Spanish land at the time, and an officer of the company. Mr. Garvin was well aware of this from our lengthy discussions. Mr. Madsen could have stated that in both instances when a 'proposed project' was created for the Spanish land (which could have been mistaken for or passed off as an attempt at a ponzi scheme by someone wishing to deliberately misdescribe or portray it wrongly), 'Vista de Paramount' and 'Monterey', that they were in fact approaches made to him and myself by others, Mr. Quayle and Mr. Storey respectively. It was NOT me who approached anyone, I was retired in Miami at the time, 5000 miles from Europe and rarely if ever travelled there other than to see my children or vacation.

Whilst this next point may not be directly relevant to Mr. Garvin's actions, as an additional point of interest for your Honor, my wife comes from an extremely successful, well respected family of industrialists in Colombia. They have been fortunate enough to have held a long revolving contract with General Motors, amongst other known brands, for the manufacture of vehicle soft furnishings over 50 years. I love my father in law and hope he lives forever, however with him approaching 89 years of age, having had 2 strokes and now suffering from cancer I suspect that is unlikely. The likelihood is that his demise will put my wife and I in a position of never needing to work again. I had absolutely no motive whatsoever to commit a crime or even take a risk of being implicated in one by being close to it, had I believed one may be committed, which I didn't. Mr. Garvin is well aware of my family's standing and what it could mean to the future of my wife and I. We discussed him disclosing this to the Court on numerous occasions and yet he completely failed to mention this.

Mr. Garvin was equally negligent in his treatment of Mr. Phillips as a witness (I will not comment on my views as to Mr. Phillips 'real role' at trial - I have since realised that he was 'connected' to the people who may have had an interest in me being found guilty) Amongst many other helpful things Mr. Phillips could have been asked to confirm, he could have refuted the statement 'Jim Moore then started OurSpace' or 'Jim Moore put you on the board of OurSpace' both of which Mr. Garvin knew were false and were presumably made in the first instance in order to establish a 'pattern of behavior', control and / or authority of OurSpace on my part, neither of which I had. Mr. Garvin chose not to challenge either statement.

Astonishingly the statement regarding 'Jim Moore starting OurSpace' was made by Mr. Garvin himself saving Mr. Vainberg and Mr. Bell the job of attempting to smear me with respect to this matter. Mr. Garvin appeared determined not to be in any way interrupted in his plight to ensure any exculpatory material at all, and the 'real narrative' that him and I had discussed many times (Mr. Garvin himself attests in writing to the substantial time he spent with me) remained hidden or so misdescribed to the Court so as to appear unrecognisable from the truth.

Mr. Garvin went on to ignore statements offered up by US Govt in the form of MOi's that were clearly exculpatory as they appeared to show that Mr. Haddow himself believed Mr. Storey had been requested by me to be the person responsible for performing due diligence on Mr. Haddow and his past, etc. (had this due diligence have been properly conducted it should also have uncovered the 'non existence' of Jonathan Black prior to any crime being committed) Mr. Haddow in a separate MOi also stated clearly that Mr. Storey 'was Moore's route to UPG'. The 12 - 20 witnesses I had requested Mr. Garvin subpoena could only have helped my case by confirming in person that they were duped by Mr. Haddow as to the existence of Jonathan Black at the time.

Your Honor, I have made extensive notes now of inexplicable elements of advice given to me by Mr. Garvin throughout the course of the '2 cases', Lake Austin and BarWorks and my list is now approaching SIXTY separate points. These points range from Mr. Garvin 'point blank refusing' to represent me at trial in the Lake Austin case, effectively leaving me NO OPTION but to wrongly plead guilty at the time, to him insisting that Neil Storey's name be removed from submissions and communications on the basis that 'other people are of no interest to the Govt, this case is about YOU'.

My wife would also attest to my abject horror and sheer incredulity in the Lake Austin case at the time, of being left with no viable alternative by Mr. Garvin but to plead guilty to a crime I did not believe that I committed and still do not. One of my points about Mr. Garvin is that he insisted that 'almost everyone has to lie in the US system to plead guilty', something now after seeing Mr. Haddow in Court I realise was a blatant lie told to me by Mr. Garvin to extract a guilty plea for something I hadn't

TRULINCS 14532104 - MOORE, JAMES - Unit: NYM-K-S

----------------------------------------------------------------------------------------

done rather than go to trial.

Various other 'smaller points', which at the time made no sense now seem to 'fit together perfectly'. The thrust of these collective points seems to shift blame to me from others parties common to both these cases and specifically, Neil Storey, who I now see Mr. Garvin has worked tirelessly to keep out of all filings and communications related to these cases.

Your Honor, one of my very first actions upon being returned to NY MCC was to attempt to report Mr. Garvin's wrongdoing to the FBI, via the assistant warden and the warden himself. I have so far received no response to my requests.

I have also enclosed letters which are self explanatory. You will see that I have been working tirelessly to try and expose this abomination for months. Unfortunately I had foolishly trusted Mr. Garvin as the 'point person' to deal with responses to these letters.

I am hopeful that Your Honor would agree with my opening points that whilst it may be theoretically possible for a man to 'bribe his own lawyer to have himself found guilty' it is unlikely enough to be considered impossible. Should things proceed as scheduled from now, I could not allow myself to use Mr. Garvin as counsel. I now see that he deliberately caused me to be wrongly imprisoned in the first instance for the 'Lake Austin' fraud, and has worked to make matters worse with the BarWorks case, working against me to ensure that I was found 'guilty' for this a second felony. (Previously I have never been in trouble in my entire life and 35 year career other than motoring related offences)

I have a PSi interview scheduled for 8/7 and I am informed by Mr. Garvin that is followed by a deadline for a sentencing memorandum of mid August. That means I would be required to employ replacement counsel, an additional, and surely unnecessary and unfair burden on me under the circumstances that my wife and I can ill afford after paying Mr. Garvin's fees of $400,000 which my wife has had to borrow to meet. Alternatively pay Mr. Garvin's additional expenses something I am absolutely opposed to. I would also need to put 'real' friends and family overseas (rather than those used initially by others to help 'frame' me in this) to considerable trouble to collate letters of support for my sentencing memorandum.

Your Honor, now it is blatantly clear I am sure, for everyone concerned to see what Mr. Garvin has been doing, and has been doing for a considerable period of time, I am asking once again, that you please make an order for my immediate release from Federal Custody and return of my passport, so that I may be reunited with my wife and family in Bogota, Colombia absolutely as soon as possible.

TRULINCS 14532104 - MOORE, JAMES - Unit: NYM-K-S

---

FROM: 14532104
TO:
SUBJECT: URGENT REQUEST CONT
DATE: 06/18/2019 06:10:50 PM

Your Honor, after almost three years of this process, I am exhausted trying to bring these wrongdoings and gross perversions of justice against me and others to the attention of relevant Authorities.

Please bring this lengthy nightmare of wrongful detention and imprisonment to a prompt end for my family and I now, by ordering my immediate release.

Thank You for your consideration Your Honor.

Kind regards

James Moore

---

Defense counsel to respond by 7-1-19. Government to respond by 7-8-19. Mr. Moore's application for release is denied.

SO ORDERED:
Date: 6/24/19

Richard M. Berman
Richard M. Berman, U.S.D.J.