```
k1l2MooC kjc
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,                New York, N.Y.
4           v.                              18 Cr. 759(RMB)
5  JAMES MOORE,
6              Defendant.
7  ------------------------------x          Conference
8                                           January 21, 2020
                                            11:20 a.m.
9
10 Before:
11                  HON. RICHARD M. BERMAN,
12                                           District Judge
13
14
                            APPEARANCES
15
   GEOFFREY S. BERMAN
16      United States Attorney for the
        Southern District of New York
17 BY:  VLADISLAV VAINBERG
        MARTIN S. BELL
18      Assistant United States Attorneys
19
   MICHAEL GRUDBERG
20      Attorney for Defendant
21
22 Also Present:
23 Special Agent Angela Tassone, FBI
24
25

1          THE COURT:  So I, as you must have as well, received a
2    forensic report.  I just got to see it briefly this morning.  I
3    don't know if you all have had the chance to review it
4    yourselves.  I wanted to get a sense from you what the
5    implications of this report are, what you want to do about it,
6    and how it affects our proceedings.
7          So happy to hear from defense counsel first.
8          MR. GRUDBERG:  Your Honor, I have discussed it briefly
9    with the government.  I guess I will start.
10         THE COURT:  Okay.
11         MR. GRUDBERG:  Think it was everybody's anticipation,
12   recognizing as we do, the caseload up at Devens and the
13   pressures on them to turn this around.  I at least was
14   anticipating we would have some chance to review the report at
15   least days in advance of the conference.  I have provided a
16   copy just this minute to Mr. Moore.  He has not had an
17   opportunity to review it completely.
18         I guess what I would suggest to the court is that,
19   because there are a number of factors implicated just in my
20   initial review of it, including our continuing representation,
21   the possibility of medication or an order to confine Mr. Moore
22   for purposes of treatment, I think there is a lot for me to
23   digest and go through with him.  So what I would propose to the
24   court is that we have at least a period of days during which I
25   could dig in a little deeper into the issues, discuss it with

1     Mr. Moore, and report back by letter or in person to the court.
2             MR. BELL:  Good morning, Judge.
3             THE COURT:  Hi.
4             MR. BELL:  I think that, broadly speaking, that's
5     fine.  It may nevertheless be worth our mapping out some of
6     what this means and does not mean now, if only so that it can
7     shape the future course of our work in this case a little bit.
8             One thing that I will note on the record, if only
9     because I think it forecloses a number of concerns, is the
10    examiner's finding that Mr. Moore's issues do not seem to have
11    set in until posttrial, which is a good thing, obviously, that
12    it at least precludes the possibility of some things that would
13    question the integrity of Mr. Moore's participation in the
14    trial.
15            It may be worth -- and I haven't gotten a chance to
16    speak about this with defense counsel as yet, but it may also
17    be worth your Honor ordering, to the extent possible -- and I
18    know that the Bureau of Prisons and the marshals have other
19    constraints, that Mr. Moore at least for the time being be
20    moved to a facility other than the MCC.
21            One thing that we observed is that Mr. Moore, while at
22    Devens, seemed to report to the examiner that he felt safe
23    there, that his concerns were limited to the time that he had
24    been at the MCC.  Obviously we are not sending him back to
25    Devens, but it may be worth, for his own peace of mind,

1   Mr. Moore being sent to a facility other than the MCC, since a
2   number of his concerns, whatever they may be founded in, seem
3   to be rooted in that particular institution, whether it is
4   other things that have happened there or specific interactions
5   he has had there or what have you.
6           So I did want to tee that much up insofar as it might
7   affect things now.
8           The other thing, I mean, the report --
9           THE COURT:  Just on that point, as you know well, the
10  court can make certain recommendations, but the issue of
11  housing is really a function of Bureau of Prisons; and
12  historically, the government, namely, you, had a good way of, I
13  don't know about influencing, but of leading to a housing that
14  you think is more appropriate.  But that would be something
15  that I would want you to do in conjunction with defense
16  counsel.  So that would be my suggestion there.  You and
17  defense counsel, as soon as defense counsel has had an
18  appropriate opportunity to go through this report and think of
19  the ramifications, etc., if there is to be such a
20  recommendation, maybe -- not maybe -- it would be desirable to
21  be a joint recommendation.
22          MR. BELL:  And that's fine, Judge.  I think cases such
23  as that, recognizing that BOP has those constraints, we may put
24  in to your Honor jointly, if that is where we both are, for
25  your recommendation, if only because it puts a little bit more

1   muscle behind the request, recognizing that it is within the
2   domain the BOP.
3           THE COURT:  Okay.
4           MR. BELL:  The other then I was going to note, Judge,
5   I mean, the report has some wrinkles to it that, for lack of a
6   better term, I will describe as interesting.  It does seem to
7   affirm that Mr. Moore is capable of understanding and
8   discerning the circumstances in which he finds himself, the
9   procedure that he is participating in.  The sole concern here
10  seems to be with respect to the substance of Mr. Moore's
11  concerns, which are described here as delusional, and we have
12  no reason to believe that there is any factual anchorage to
13  them.
14          Nevertheless, despite having made that factual
15  finding, the recommendation of the examiner is that, because of
16  those concerns, Mr. Moore may not be able to participate fully
17  in the proceedings.  It may very well be that we reach a
18  joint -- I can imagine a circumstance, Judge, in which we reach
19  a joint recommendation that Mr. Moore undergo the course of
20  medication that seems to be recommended here; and, assuming
21  that he is willing to go along with that, then I think that we
22  would propose some period of time where he could undergo that
23  treatment and then be checked afterwards to see if we could
24  proceed.  I think that's possible.  I think there may or may
25  not be a need for some sort of compulsion there.  There have

been points in our timeline in which Mr. Moore has rejected the idea of taking medication, and we know from communications that he has sent from jail that there have been points in which he said that medication seems to help him and that he would be better off with medication.

So I think that defense counsel's point is well taken. He should have the opportunity to confer with Mr. Moore, we will speak to him as well, and we will, I guess, return in person on a date certain. I don't know how much time is needed, but we are here regardless.

THE COURT: Hold on, Mr. Moore. I will let you speak in a minute. It may well be -- and this is just a thought -- we had this one report from the Bureau of Prisons. I don't know if that's the last word or should be the last word or if there should be another opinion or a consultation with a private examiner or something. I don't know, but I'm going to defer in the first instance to the defense on this subject, because I think it is appropriate that they -- that Mr. Moore be comfortable in determining which way we are going.

MR. BELL: The only other thing I would raise, Judge, is I know that at various prior points, the juncture that we found ourselves in was in the context of a potential request for Mr. Moore to go *pro se*. I don't think that's where we are right now.

THE COURT: Well, we are not at the moment. We may --

1    I don't know where we are heading, but I don't think we should
2    skip ahead to that just yet.
3             MR. BELL:  I only note that, Judge, because of the
4    substance of the report that suggests that that was not a
5    genuine application in the first instance, but I take your
6    Honor's point.  It may be wise for us to take things a step at
7    a time.
8             THE COURT:  Yes.
9             MR. GRUDBERG:  Your Honor, in addition to the
10   representation issues to which Mr. Bell has averred, I did want
11   to tell the court that, just in my brief conversations with
12   Mr. Moore since he has come out, it appears that the treatment
13   status as of the time that Dr. Kissin examined Mr. Moore, and
14   he was returned to the New York area several weeks ago, it may
15   not be the last word in terms of the treatment he is receiving
16   in BOP custody, including the possibility of medication.  I do
17   want to have chance to hear him out on that, get the latest,
18   and consider that in our recommendation to the court.
19            THE COURT:  Mr. Moore has indicated he wants to speak.
20   Is that --
21            MR. GRUDBERG:  We will take it one at a time, your
22   Honor, but I do not have an objection to Mr. Moore speaking.
23            THE DEFENDANT:  Your Honor, I just wanted to reply on
24   my own status with regard to medication.  I was interviewed
25   whilst in suicide watch at New York MCC.  I think the

1   gentleman's name is Dr. Omafoi, I believe is the --

2           THE COURT:  Could you spell that so the --

3           THE DEFENDANT:  I'm going to guess, O-M-A-F-O-I.

4           He is a senior psychiatrist, a forensic psychiatrist

5   in New York MCC.  He asked if I would take a course of

6   medication, being antidepressants, and I accepted it.  I said

7   yes.  I felt that my condition at that point had become so dire

8   that I needed to finally succumb to that, so I am actually

9   taking that medication now.

10          THE COURT:  And what medication is it, do you know?

11          THE DEFENDANT:  Sertraline.  It's a generic form of

12  SSRI.

13          THE COURT:  I think it is Zoloft commonly.

14          THE DEFENDANT:  Yes, you are right, your Honor, it is

15  the generic of Zoloft.

16          THE COURT:  In what dosage?

17          THE DEFENDANT:  Two tablets a day.

18          THE COURT:  Do you know how many milligrams?

19          THE DEFENDANT:  I'm afraid not.

20          THE COURT:  Okay.  That's a common form of SSRI

21  medication, and I am glad you feel better for it.

22          THE DEFENDANT:  Thank you, your Honor.

23          THE COURT:  So I think, you know, I don't know how

24  much time you are looking for.  You can have as much time as

25  you need to do this thoroughly.  It strikes me you will need

1    some time.  But I will defer to you again as to that, as well.
2              MR. GRUDBERG:  I guess what I would propose, your
3    Honor, even if we are not all the way there in surveying the
4    issues that Mr. Moore and I need to cover, I think just to keep
5    track of this, if we could report first informally to the
6    government and then to the court a week from today by letter
7    with a little better view of what we would be looking for going
8    forward, I think that that would give us sufficient time to
9    make progress.
10             THE COURT:  All right.  I would like to set a court
11   date even if it is one that we change, what, two, three weeks
12   or something.
13             (Defense counsel and defendant confer)
14             MR. GRUDBERG:  May I have a moment, your Honor?
15             (Defense counsel and defendant confer)
16             MR. GRUDBERG:  Your Honor, Mr. Moore wishes for me to
17   convey to the court that with respect to the last paragraph,
18   the recommendation of Dr. Kissin, he is -- and, again, subject
19   to further conversations, but he wants me to be clear with the
20   court that he is in agreement now to submit to the
21   recommendation that Dr. Kissin has made.
22             That said, I would defer to the court in terms of any
23   follow-up scheduling for a control conference that the court
24   sees fit.  So a letter within a week, and any conference date
25   that the court thinks would be acceptable.

1      THE DEFENDANT:  Your Honor, I'm just conscious that
2 there is a timing gap between this report and the court being
3 aware that I have been taking medication for two weeks.
4      THE COURT:  Yes.  So I don't know if this is the
5 aspect that you are unclear about, but it is the one that is a
6 little unclear, which is as follows:  So normally we would be
7 heading, in a normal criminal case, but for this report, psych
8 evaluation, we would be heading to sentencing, and you know
9 what that entails.  Sentencing also entails a treatment regime,
10 if possible.  There are some facilities that are more conducive
11 to treatment than others, but this report suggests, at least
12 the way it stands now, that we not proceed to sentencing
13 because of the -- not the last paragraph, but the paragraph
14 before that on the same page, that says that, in Dr. Kissin's
15 opinion, there are symptoms of a serious mental illness or
16 defect such that you you are unable to understand the nature
17 and consequences of the proceedings against you and assist
18 properly in your defense.
19      Now, that may have changed or may be changing with the
20 medication, may not.  But that is the stumbling block to
21 sentencing.  So if we are not sentencing, then we need to come
22 up with a plan, what are we doing, namely, what are you doing?
23 Are you going to have some sort of treatment?  Where is it
24 going to be?  Is it going to be with medication?  Is it going
25 to be at another facility?  I'm not sure that Devens is a -- is

1   that such a facility?  Do you know?

2          THE DEFENDANT:  Thank you for the clarification, your
3   Honor.  I apologize.  Thank you.

4          THE COURT:  Do you know?

5          MR. BELL:  I actually don't know whether, were he to
6   be committed, he would be treated there or someplace else.

7          THE COURT:  So we would have to more investigate all
8   of that so that you could make a proper determination as to
9   what is in your best interest to do.  So that's why I think we
10  do need a little time --

11         THE DEFENDANT:  Thank you, your Honor.

12         THE COURT:  -- to understand those different options.
13  I'm going to put it down for, I don't know, let's say three
14  weeks, if we have a slot.

15         (Pause)

16         THE COURT:  How would February 11 at 9:30 be?

17         MR. GRUDBERG:  That's open for me, your Honor.

18         THE COURT:  So I am just going to put it down for a
19  status; and if that turns out to be a date that you are not
20  ready yet or not a good date for another reason, you will let
21  me know.  But otherwise, we will get together.

22         So are you comfortable back at MCC?  Where do they
23  have you housed?

24         THE DEFENDANT:  Right now they have got me housed on
25  the seventh floor, in 7 south.  I'm comfortable there, your

k1l2MooC   kjc

1  Honor.  Thank you.
2              THE COURT:  Okay.  Good.  Okay.  So good to see you
3  all, and I will see you again on February 11.
4              MR. GRUDBERG:  Thank you, Judge.
5              THE COURT:  All right.  Thanks.
6                                 oOo