JAMES MOORE 14532-104.

5/3/21.

HONORABLE JUDGE R. BERMAN
UNITED STATES COURTHOUSE
500 PEARL STREET
COURTROOM 17b,
NEW YORK
NY 10007.

DEAR JUDGE BERMAN,
PLEASE FIND ENCLOSED SUBMISSIONS IN RELATION TO
MY SENTENCING, THAT I PREPARED MYSELF AS MY
COUNSEL HAS BEEN INCAPACITATED DUE TO
SURGERY.
    AT TIME OF WRITING, I HAVE JUST BEEN
INFORMED BY COUNSEL THAT HE WILL APPLY FOR
A SHORT CONTINUANCE ON MY BEHALF AS A
RESULT OF HIS INCAPACITATION AND SUBSEQUENT
INABILITY TO MEET THE DEADLINES PREVIOUSLY
AGREED WITH THE COURT.
    ALSO, YOUR HONOR WILL NOTE THAT I HAVE
BEEN UNABLE TO RESPOND TO THE P.S.R IN
THESE SUBMISSIONS AS CURRENTLY I HAVE NOT
RECEIVED A COPY OF IT. HOPEFULLY YOUR HONOR
WILL AGREE TO ACCEPT THIS RESPONSE FROM ME
LATER, DIRECTLY OR OTHERWISE ONCE THE P.S.R.
HAS BEEN MADE AVAILABLE TO ME FOR COMMENT.
    I AM NEITHER QUALIFIED OR CAPABLE OF
RESEARCHING THE LEGAL POSITION AS IT RELATES
TO MY SENTENCING AND HOPEFULLY MY COUNSEL

WILL BE IN A POSITION TO ADD THESE POINTS LATER.

IN ANY EVENT, I BELIEVE YOUR HONOR IS WELL
VERSED IN THESE MATTERS AND WILL ARRIVE AT
A FAIR AND BALANCED JUDGMENT.

YOURS SINCERELY,

JAMES MOORE.

JAMES MOORE 14532-104.

HONORABLE JUDGE R. BERMAN
UNITED STATES COURTHOUSE
500 PEARL STREET,
COURTROOM 27b,
NEW YORK
NY 10007.

DEAR JUDGE BERMAN,

PLEASE ACCEPT THESE SUBMISSIONS FROM ME
DIRECTLY IN CONSIDERING ANY SENTENCE YOU MAY
FEEL THE NEED TO IMPOSE.

I AM NOT CONVERSANT WITH THE LAW AS IT
PERTAINS TO MY CASE SO AM TAKING THIS STEP AS A
LAST RESORT, RATHER THAN CAUSE THE COURT MORE
DELAY AND WASTED TIME.

MY UNDERSTANDING IS THAT YOU HAVE BROAD
DISCRETION WITH REGARD TO SENTENCING AND I
AM HOPEFUL THAT YOU WILL SEE THE NEED TO
EXERCISE IT TO SHOW LENIENCY ONCE YOU HAVE
HAD THE OPPORTUNITY TO REVIEW THESE ADDITIONAL
FACTS.

WHILST I WAS FOUND GUILTY BY A JURY AT TRIAL
IN YOUR COURT IN JUNE 2019, I BELIEVE MY REAL
GUILT IS THAT OF NAIVETE IN MY DEALINGS WITH
OTHERS. I HAVE ALWAYS TRUSTED A THIRD PARTY TO
DO DUE DILIGENCE ON THE PROJECTS OFFERED
TO MY CLIENTS (IN THE PRIOR "LAKE AUSTIN" CASE) AND
IN THIS CASE, BARWORKS, TO THE "MASTER AGENT"
WE INTRODUCED.

I DO NOT OFFER THIS AS AN EXCUSE BUT AS A
STATEMENT OF FACT. I BELIEVE TO THIS DAY THAT MY
INTENT IN BOTH INSTANCES WAS GOOD, THAT I WAS
BADLY LET DOWN OR MISLED, AND THAT MY ROLE
IN BARWORKS ESPECIALLY WAS A MINOR ROLE.

AS A SUMMARY OF WHAT I SEE AS MY REAL
INVOLVEMENT IN "BARWORKS" I OFFER THE FOLLOWING
POINTS FOR YOUR CONSIDERATION:-

i) CONTRARY TO STATEMENTS MADE BY MR. HADDOW AT
TRIAL I WAS NEVER HIS BUSINESS PARTNER. HIS OWN
ACTIONS & STATEMENTS AND OTHER SUPPORTING FACTS
ILLUSTRATE THIS. HE ARGUED THAT HE COULD NOT TAKE
AN EQUITY PARTNER AT ANY LEVEL, DUE TO THE FACT
THAT HIS WIFE WAS A 50% PARTNER. PRESS REPORTS
ON THE SENTENCING OF "SAVRAJ GATA AURA" IMPLY
THAT HE WAS HADDOW'S BUSINESS PARTNER.

ii) HADDOW ALONE CONTROLLED ALL THE MONEY AND
DIVERTED THE BULK OF THE $40-47M FOR HIS
SOLE BENEFIT (OR THAT OF HIM & HIS WIFE).

iii) I HAD NO PART IN THE SELECTION OF, OR EVER
MET, ANY OF THE PROFESSIONALS REPRESENTING THE
"BARWORKS" BUSINESS.

iv) I PLAYED NO PART, AND WAS NEVER CONSULTED ON,
PREPARATION OF MARKETING MATERIALS FOR THE
BUSINESS.

v.) I HAD NO ROLE IN THE PREPARATION OF SALES
SCRIPTS, PITCHES, FOR EITHER AGENTS OR CLIENTS.

vi) MY ONLY 'ACTIVE INPUT' TO THE BUSINESS CONSISTED
OF ME CONTRIBUTING TO THE RECRUITMENT OF ONE
"MASTER AGENT" IN SPAIN, OTHER THAN THIS I PLAYED
NO PART IN THE RECRUITMENT OF SALES AGENTS,
MANAGEMENT, STAFF OR INVESTORS.

vii) MY ROLE WAS AS MARKETING LEADER OF A SMALL TEAM
WORKING TO LOCATE AND RECRUIT "INTERNATIONAL

LICENSEES FOR THE "BARWORKS" CONCEPT. THE TWO WE LOCATED ELECTED (ON OUR RECOMENDATION) NOT TO PURSUE THE "BARWORKS" OPPORTUNITY. THE COMPANY THAT THIS GROUP WAS INTENDED TO BECOME A PART OF AND WORK WITH RECEIVED THE PAYMENTS FROM BARWORKS AND NOT ME NOR TO MY KNOWLEDGE ANY OF THE OTHER INDIVIDUALS INVOLVED.

viii) I RECEIVED NO DIRECT PAYMENT(S) OR INDUCEMENT(S) OF ANY KIND FROM EITHER "BARWORKS" OR MR HADDOW FOR MY SERVICES.

ix) THE ONLY REMUNERATION I RECEIVED WAS BY WAY OF SALARY WHICH I HAD HISTORICALLY RECEIVED OVER THE PREVIOUS 2-3 YEARS. THIS RELATIONSHIP REMAINED UNCHANGED ONCE THE "BARWORKS" PROJECT WAS PURSUED AND TO MY KNOWLEDGE MY SALARY WAS NOT INCREASED.

x.) I BELIEVE THAT MY TOTAL REMUNERATION FROM THE COMPANY, (WHICH TO MY KNOWLEDGE WAS FROM COMINGLED FUNDS EARNED FROM MULTIPLE ACTIVITIES) THROUGHOUT THE PERIOD OF INVOLVEMENT WITH "BARWORKS" WAS IN THE ORDER OF $10-20,000 RATHER THAN THE $1,650,000 CLAIMED AT TRIAL.

xi.) THE COMPANY HAD BEEN PREVIOUSLY, AND WAS, INVOLVED IN ACTIVITIES OTHER THAN CONSULTING ON THE "BARWORKS" PROJECT. (LANGUAGE DUBBING, T.V PRODUCTION AND MEDIA CONSULTANCY).

xii) I NEVER HAD AN EXECUTIVE ROLE AT "BARWORKS". I HAD NO "ALLOCATED SPACE" OF ANY KIND AT ANY OF THEIR PREMISES AND NO "BARWORKS" EMAIL ADDRESS. I WAS NEVER A SIGNATORY ON ANY "BARWORKS" ACCOUNTS AND NEVER RECEIVED MANAGEMENT INFORMATION FROM THE COMPANY OR ITS OFFICERS.

xiii) I SIMPLY HAD NO "DAY TO DAY" ROLE IN THE MANAGEMENT OF "BARWORKS". I WAS NOT ON SITE, AND ON THE FEW VISITS I MADE TO THEIR PREMISES (BETWEEN 3-5 FROM MEMORY) IT WAS CLEAR THAT STAFF WERE NOT AWARE OF MY INVOLVEMENT.

xiv) I HAD NO AUTHORITY OVER THE USE OF "BARWORKS" FUNDS.

xv) I WAS NEVER INVOLVED IN DISTRIBUTION OF DOCUMENTS OTHER THAN TO A VERY LIMITED NUMBER OF POTENTIAL "INTERNATIONAL LICENSEES" AND "MASTER AGENTS" ALL OF WHICH WERE "SOPHISTICATED INVESTORS" AND/OR HIGH NET WORTH INDIVIDUALS.

xvi) I HAD NO DIRECT INVESTOR CONTACT - EVER.

xvii) I HAD NO SALES MANAGEMENT ROLE IN EITHER BARWORKS, THE LICENSEES OR THE MASTER AGENT WE INTRODUCED TO BARWORKS. I WAS NEVER INVOLVED IN CO-ORDINATION OR TRAINING OF SALES STAFF.

xviii) MY RELATIONSHIP WITH THE MASTER AGENT WE INTRODUCED WAS SHORT LIVED AND IN ANY CASE I HAD NO MANAGEMENT ROLE OR AUTHORITY IN THAT BUSINESS — THE DECISION TO PROMOTE "BARWORKS" AND RESPONSIBILITY FOR ANY DUE DILIGENCE REQUIRED ON BEHALF OF THEIR CLIENTS AND AGENTS, WAS THEIRS.

xix) WITH RESPECT TO DUE DILIGENCE ON "OUR" PART, A PROPOSED PARTNER OF THE COMPANY I WAS WORKING WITH APPEARED TO MEET AND EXCEED THE STANDARDS OF COMPETENCE REQUIRED TO PERFORM DUE DILIGENCE ON MR. HADDOW AND HIS PROJECT, AS HE WAS CONTRACTED AS A FRAUD INVESTIGATOR TO A PROMINENT MIAMI LAW FIRM.

ARREST HISTORY, etc.

IN LATE SUMMER 2016, I AGREED VOLUNTARILY TO
A 2 HOUR SKYPE INTERVIEW WITH S.E.C, ON BEHALF
OF THE COMPANY, UNIVERSAL VOICETECH INC. I
BELIEVED AT ALL TIMES THAT I WAS SPEAKING AS
AN EMPLOYEE AND NOT AN INDEPENDENT PARTY.

   AS A RESULT OF REQUESTS MADE DURING THIS
INTERVIEW, I PROVIDED COPIES OF EMAILS BETWEEN
MR HADDOW & MYSELF, ONCE AGAIN VOLUNTARILY
IN RESPONSE TO S.E.C'S REQUESTS.

   SUBSEQUENTLY UPON MY RETURN TO U.S.A AROUND
OCTOBER 2016, MY ELECTRONIC DEVICES WERE SEIZED
& RETURNED SOME WEEKS LATER.

   UPON RETURNING TO U.S.A FROM EUROPE IN FEB 2017
I WAS DETAINED BY 3 AGENTS, FROM F.D.I.C,
IRS CRIMINAL DIVISION, & D.H.S. I WAS ASKED
TO WAIVE MY MIRANDA RIGHTS TO BE INTERVIEWED,
WHICH I DID, SUBSEQUENTLY SUBMITTING MYSELF,
VOLUNTARILY, TO AN ALMOST 3 HOUR VIDEO TAPED
"INTERROGATION". DURING THIS PROCESS, NUMEROUS
QUESTIONS WERE ASKED ABOUT "BARWORKS"
(ALTHOUGH I HAD BEEN PRESENTED WITH A
19 COUNT INDICTMENT FOR "BANK FRAUD &
BANK FRAUD CONSPIRACY" IN CONNECTION WITH
"LAKE AUSTIN" IN FLORIDA WITH NO MENTION OF
"BARWORKS"). WHILST THE GOV'T HAD THIS VIDEO, ALONG
WITH THE EMAILS SUPPLIED TO S.E.C, THEY CHOSE
NOT TO CHARGE ME FOR "BARWORKS" UNTIL 19
MONTHS LATER, WHICH THEY DID IN THE COURT
ROOM IN ORLANDO, IMMEDIATELY AFTER MY
SENTENCING FOR "LAKE AUSTIN" CONCLUDED.

   THROUGHOUT THIS TIME, THE GOV'T SEEMINGLY
RECEIVED/ADDED NO EVIDENCE, RELYING UPON THE
ORIGINAL EMAILS PROVIDED TO S.E.C AND THE

VIDEO OF MY INTERROGATION.

IN ADDITION, BETWEEN FEB 2017 & NOV 2017, CIVIL PROCEEDINGS WERE UNDERWAY AGAINST ME IN THE 'ROYAL COURTS OF JUSTICE' IN LONDON, WITH RESPECT TO THE COLLAPSE OF MY U.K BASED BUSINESSES (WHICH HAD PROMOTED 'LAKE AUSTIN' TO THEIR CLIENTS) AND COMMISSIONS RECEIVED BY THEM AND OTHER COMPANIES IN WHICH I HAD AN INTEREST AT THE TIME.

THE SCOPE AND ELEMENTS OF THIS CASE WERE COMPLEX. AS A RESULT OF MY U.K BANKRUPTCY AND BEING PREVENTED FROM LEAVING U.S.A AT THE TIME, I WAS NOT REPRESENTED. TO ASSIST YOUR HONOR I HAVE PROVIDED THE INDEX AND OVERALL OUTCOME OF THE CASE. I BELIEVE THIS TO BE RELEVANT AS THE JUDGMENT WAS ONLY HANDED DOWN IN APRIL 2018 THUS PREVENTING ME INCLUDING IT IN MY 'LAKE AUSTIN' FRAUD DEFENSE - SOME 2 MONTHS AFTER I HAD BEEN FORCED INTO A PLEA DEAL - HAD THE U.K. JUDGMENT BEEN AVAILABLE SOONER I WOULD HAVE REFUSED TO PLEAD TO "MISPRISION OF A FELONY" AND GONE TO TRIAL, MOST PROBABLY RESULTING IN ME NOW HAVING "NO CRIMINAL HISTORY" (THE U.K JUDGMENT EFFECTIVELY SAID THERE WAS NO CASE AGAINST ME FOR FRAUD OR NEGLIGENCE AND DISMISSED ALL CLAIMS). IF I HAD NO CRIMINAL HISTORY PRIOR TO "BARWORKS" AND RECEIVED ONLY $10-20,000 FROM ITS ACTIVITIES, THEN SURELY THIS IS A VERY DIFFERENT SCENARIO THAN THAT SEEMINGLY ENVISAGED BY U.S. GOV'T?

EFFECTS OF "LOCKDOWNS"

I WAS LOCKED DOWN BETWEEN FEB - APRIL 2020 IN N.Y. MCC DUE TO A GUN BEING FOUND ON THE PREMISES. SUBSEQUENTLY I WAS MOVED TO BJTNER IN APRIL

WHERE I WAS LOCKED DOWN UNTIL I LEFT IN NOVEMBER DUE TO COVID 19. "LOCKDOWN" MEANT SPENDING 24-7 IN MY CELL OTHER THAN A 30-60 MINUTE PERIOD FOR SHOWERS AND PHONE CALLS GRANTED 2-3 TIMES A WEEK. THIS HIGH LEVEL OF CONFINEMENT WITH NO TIME OUTSIDE THE CELL NATURALLY BROUGHT ADDITIONAL STRESS TO MY EXPERIENCE & I WOULD KINDLY ASK THAT YOU FACTOR THIS INTO MY SENTENCING CALCULATION.

COMPARATIVE SENTENCE - SAVRAJ GATA-AURA.

I HAVE NO ACCESS TO 'PACER' BUT HAVE BEEN SENT EXCERPTS FROM A PRESS REPORT REGARDING "SAVRAJ GATA AURA", WHOM IT REFERS TO AS "HADDOW'S BUSINESS PARTNER". THE REPORT STATES THAT HE EARNED "CLOSE TO $3 MILLION", PROMOTING BARWORKS TO "HUNDREDS OF VICTIMS", AND WAS RESPONSIBLE FOR RAISING 'APPROXIMATELY $40M' (APPROX 6-8 TIMES THE AMOUNT RAISED BY THE SINGLE MASTER AGENT INTRODUCED BY ME & MY GROUP.). THE REPORT GOES ON TO STATE THAT JUDGE RAKOFF SENTENCED GATA-AURA TO "FOUR YEARS IN PRISON" IN SUMMER 2020. I WOULD ASK YOUR HONOR TO PLEASE CONSIDER THE SIGNIFICANT DIFFERENCE IN OUR ROLES WHEN DETERMINING AN APPROPRIATE SENTENCE, THE FACT THAT I HAD 'ANY' INVOLVEMENT WITH BARWORKS, OF ANY KIND, FOR LESS THAN ONE THIRD OF THE TIME "GATA-AURA" WAS ACTIVE, WITH A MUCH LESSER ROLE.

CHARACTER REFERENCES.

I HAVE ENCLOSED A CHARACTER REFERENCE FROM A LONG-TIME ASSOCIATE, PETER COOKSON. I AM NOT IN A POSITION TO GARNER ADDITIONAL REFERENCES FROM HERE SO WOULD RESPECTFULLY

ASK YOUR HONOR TO PLEASE REVIEW THE 30+ FILED IN MY SUPPORT IN THE "LAICE AUSTIN" CASE, AND CONSIDER THEM AS STILL RELEVANT WITH RESPECT TO MY CHARACTER & AS SUCH APPLICABLE TO THIS CASE ALSO.

APOLOGIES & SUMMARY.

YOUR HONOR, MY UNDERSTANDING IS THAT THE LAW CALLS FOR A SENTENCE "NO HARSHER THAN NECESSARY" TO ACHIEVE DETERRENCE.

I APOLOGIZE UNRESERVEDLY TO THE VICTIMS FOR THEIR LOSSES AND FOR NOT BEING MORE THOROUGH IN CHECKING THE BONA FIDES OF OTHERS I ALLOWED MYSELF TO BECOME INVOLVED WITH — FOR THIS ESPECIALLY I TAKE FULL RESPONSIBILITY. I HAVE DEFINITELY LEARNT THIS LESSON AS A RESULT OF THE 34 MONTHS I HAVE SPENT IN PRISON AT TIME OF WRITING THIS.

I WOULD ASK THAT YOUR HONOR PLEASE CONSIDER RUNNING MY SENTENCES CONCURRENTLY AS I DO NOT BELIEVE THAT YOU WILL FIND THAT A FURTHER PERIOD OF INCARCERATION WOULD SERVE ANY PRACTICAL PURPOSE IN MY CASE. THERE IS NO NEED FOR FURTHER PUNISHMENT OR EDUCATION TO EFFECT DETERRENCE AND THE CHANCE OF RECIDIVISM IS PRACTICALLY ZERO. IN CONSIDERING THESE POINTS, I WOULD ASK THAT YOUR HONOR CONSIDER ADOPTING THE VIEW, PLEASE, THAT MY DEBT TO SOCIETY BE "PAID IN FULL" AND SENTENCE ME TO "TIME SERVED".

IF FOR ANY REASON YOUR HONOR SHOULD NOT FEEL THIS APPROPRIATE, THEN I WOULD PLEASE ASK THAT THE ALTERNATIVES OF EITHER "HOME DETENTION" OR "SUPERVISED RELEASE" BE

CONSIDERED RATHER THAN FURTHER INCARCERATION.

I AM NOT A "FLIGHT RISK" AS I DEMONSTRATED DURING THE 19 MONTHS I SPENT FIGHTING THE "LAKE AUSTIN" CASE AND AWAITING SENTENCING.

Your HONOR, SHOULD YOU ELECT TO CHOOSE ONE OF THESE ROUTES, YOU HAVE MY ASSURANCE THAT I WILL SEEK TO COMPLY WITH ALL CONDITIONS IMPOSED UPON ME. I DO NOT BELIEVE I REPRESENT A THREAT TO SOCIETY IN ANY WAY AND SHOULD I BE FORTUNATE ENOUGH TO RECEIVE A SENTENCE THAT PERMITS IT, I INTEND TO APPLY / ATTEMPT TO RESTORE MY U.S RESIDENCY BY WHATEVER LEGAL MEANS ARE AVAILABLE TO ME AND BELIEVE THAT I CAN MAKE A VALUABLE CONTRIBUTION TO SOCIETY HERE IN THE UNITED STATES- MY AIM IN ANY EVENT, IS TO REMAIN LEGALLY IN U.S.A AND NOT TO LEAVE UNDER ANY CIRCUMSTANCES.

Your HONOR, ONCE AGAIN MAY I APOLOGIZE FOR MY DIRECT APPROACH AND IN CLOSING, THANK YOU FOR INVESTING YOUR VALUABLE TIME IN CONSIDERING MY REQUESTS AND POINTS MADE.

YOURS SINCERELY

JAMES MOORE.

James Moore 14532-104

Date: April 11, 2021

Return Address: Peter Cookson

USA

Telephone:

Email Address:

Dear Jim

As requested, I have enclosed a copy of the character reference that I provided to Judge Berman in July 2019 together with an extract from the Judgement in the case brought by the Liquidators of Instant Access Properties Ltd. against you and others. I have enclosed the opening pages and paragraph 419 being the overall result dismissing the claims against you.

The entire text of the Judgement is 105 pages and so if my enclosures are insufficient, the complete Judgement can be downloaded from the link below.

https://7kbw.co.uk/wp-content/uploads/2018/04/Instant-Access-jud.pdf

Best wishes

**Peter Cookson**

Peter J Cookson. FCA

July 11,2019

Honorable Richard M Berman
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl St, Courtroom 17b
New York
NY 10007

Dear Judge Berman

*Re: James Bernard Moore ("Jim")*

I am Peter Cookson, an English Chartered Accountant. I am aware that a jury
found Jim guilty, but I still have a high opinion of him as a friend, former
colleague and former client.

I first met Jim in 1991. At that time Jim was the marketing and sales director of a
successful perfume and related products company (L'Arome). I was introduced,
by the Company's auditor KPMG, as a consultant to renegotiate its banking
arrangements.

This group had been built up into a multi-million business based in the UK with
businesses in the US and Australia. Jim was responsible for the sales function
and was extremely successful in motivating an international team of sales people
even though he was only 30 years of age.

The L'Arome Group had got into financial difficulty as a result of spending money
on the real estate that the business occupied in the UK and US rather than
reserving cash required for the payment of its corporate taxes. KPMG were the
company's auditors and they asked me to try and help the business.

I could see that the management team were very able in promoting the business
in all aspects with the exception of finance. There was nobody on the team with
financial expertise. I arranged a re-finance of the business with venture capital.
The business continued to make good sales and diversified into slimming
products driven by Jim.

What was a good business was brought to an immediate stop when an action
taken by Chanel in 1993 in the English Court of Appeal held that L'Arome had
infringed their trade mark. The damages awarded was 'an account of profits'
which resulted in the liquidation of the business.

The action taken by Chanel in 1993 was based on L'Arome having compared some of its products to Chanel's products. In the UK, most of the use of competitor's registered trademark in a comparative advertisement was an infringement of the registration up till the end of 1994. Had the infringement occurred a year later there would have been no case to answer and L'Arome would not have failed.

During that time, I got to know Jim and admired his vision, enthusiasm, dedication and hard work. The failure of that business was in no way connected to Jim. However, he had learned that businesses needed strong financial control and good legal advice.

My next contact with Jim was in 2006. He had built up the Inside Track and Instant Access Properties business. This business was introducing the idea of buy-to-let properties to the UK public. After the turn of the century, property prices were booming and cheap finance was easily accessible based on the security of the real estate. Jim had built a thriving business and learning from previous experience had recruited someone from Sir Richard Branson's Virgin team as the CEO. He brought with him his connections from Virgin being the leading law firm Mishcon de Rea and a City firm of accountants providing financial and tax expertise.

Therefore, Jim had a successful business with a professional management team which was ready to be sold. The sales process was being conducted by Altium who had carried out financial and commercial vendor due diligence. However, they had not produced any prospective purchasers. Jim engaged me to help.

I was certainly impressed with what Jim had created and couldn't fault the quality of management and advice available to the Company.

I recommended that Investec and Ernst and Young be given the opportunity to make the sale. The job was given to E&Y in March 2007. However, in June 2007, Investec brought Direct Wonen a Dutch client of theirs to the party as a potential purchaser with an Offer of £80m in cash on Completion plus performance bonuses.

During 2007, the property bubble had started to burst on both sides of the Atlantic. Direct Wonen found that their funding lines had been withdrawn and they withdrew their offer for the Business in December 2007.

In January 2008, Analysts announced the largest single-year drop in US home sales in a quarter of a century. The sales in Inside Track and Instant Access Properties dropped dramatically and notwithstanding the injection of funds of £4.5m by Jim into the businesses to try and save them, Inside Track became insolvent in April 2008 and Instant Access Properties entered insolvency in December 2008.

The properties known as the Grande Palisades Resort in Orlando, Florida that had been sold to Instant Access Properties members were in the process of

construction and the banking consortium financing that construction withdrew its support in 2009 following the insolvency of some of its members which caused the collapse of the project and loss to the buyers.

Whereas the businesses that Jim had created had been worth in excess of £80m in June 2007, the impact of the Financial Crisis of 2007-2008 had reduced the value of the businesses to zero and together with Jim's divorce settlement left him bankrupt.

In addition, although Jim had recruited a CEO with an impeccable pedigree and the finest legal and tax advisors, he has recently found that they had colluded to make secret profits out of the group's USA venture.

Jim is a very trusting and generous soul and whilst he has proven repeatedly his ability to create markets and build businesses, he has been let down by those in whom he has put his trust.

In my personal dealings with him in connection with L'Arome and Instant Access over nearly 20 years, I have found him to be hard working and honest. As regards those businesses although they failed, they were not fraudulent and certainly not Ponzi Schemes or scams. The first business (L'Arome) failed as a result of a trade mark infringement and the second business (Inside Track and Instant Access Properties) failed due the Financial Crisis of 2007-2008 and the withdrawal of leveraged borrowing for property.

I sincerely hope that you are able to take into account the good qualities that I have seen in Jim in arriving at your Sentence.


Yours sincerely

Peter J Cookson FCA

TRULINCS 14532104 - MOORE, JAMES - Unit: PHL-G-S          *PRIVILEGE   WAIVED*
--------------------------------------------------------------------------------

JAMES MOORE on 2/26/2021 5:54:19 PM wrote
Hi Michael
The materials from Robert are to potentially add to the sentencing memo for Judge Berman's review -the UK judgment
summary purely to show that whereas I have 'criminal history' and plead guilty to misprision, I was actually EXONERATED from
any wrongdoing / involvement in that case or as described in the UK case the "arrangements in Florida" by Justice Morgan in
the UK civil court case brought against me by the company administrator. (Bankruptcy trustee)

Look forward to speaking next Friday - please let me know the time of the propose call - hopefully the interview is as you say
'streamlined' and can be dealt with within the hour. Thanks - Jim
-----Grudberg, Michael on 2/26/2021 3:06 PM wrote:

>

Hi Jim, I will work with Robert on the below. I know the materials and we will retrieve.

FYI, we today booked a one-hour call for next Friday with the new Probation Officer, Ashley Geiser. She's got the prior notes
and the FL PSR, and is hopeful of doing a streamlined interview. I'm hopeful that we could exceed the one hour if nec'y to get it
done; Probation may have more oomph than I in that department, we'll see. There are the usual waivers and authorizations to
sign; I am going to try to get those down to you in advance.

I also received today the Trulincs e-mail prints you mailed to me. Will review this weekend.

Best, MG

JAMES MOORE on 2/26/2021 12:35:59 PM wrote
Hi Robert. Happy New Years. I need your help please -can you please send me by regular mail:-
1) The reference letter sent to you by Peter Cookson relating to my sentencing, sent to you by him around 18 months ago.
2) The judgment sent to you at around the same time by Peter Cookson made by Justice Morgan in UK. (copies of front page
and last two pages should actually suffice for my needs)
They will have been emailed from "peter@cookson.net"
Some of this may be helpful in preparation of my sentencing memo so please also copy them to Michael Grudberg. (email
should be ok)
Please send to me at FC Philadelphia, PO Box 562, Philadelphia 19105
Thank You and best as always.
Jim



Neutral Citation Number: [2018] EWHC 756 (Ch)

Case No: HC-2014-01959
HC-2015-002392

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS**
**CHANCERY DIVISION**

Royal Courts of Justice, Rolls Building
Fetter Lane, London, EC4A 1NL

Date: 13/04/2018

**Before**:

**THE HONOURABLE MR JUSTICE MORGAN**
- - - - - - - - - - - - - - - - - - - -
**Between:**

| | |
|---|---|
| **INSTANT ACCESS PROPERTIES LIMITED (IN LIQUIDATION)** | **Claimant** |
| **- and -** | |
| **(1) MR BRADLEY JOHN ROSSER** | |
| **(2) MRS MARIA HELENA GIFFORD** | |
| **(3) MR JAMES BERNARD MOORE (A BANKRUPT)** | |
| **(4) JEFFCOTE DONNISON LLP** | |
| **(5) MR PHILLIP DONNISON** | |
| **(6) MISHCON DE REYA (A FIRM)** | |
| **(7) MR JONATHAN BERMAN** | **Defendants** |

**And between:**

| | |
|---|---|
| **KEVIN ANTHONY MURPHY AND RICHARD HOWARD TOONE (AS JOINT LIQUIDATORS OF INSTANT ACCESS PROPERTIES LIMITED)** | **Applicants** |
| **- and -** | |
| **(1) MR BRADLEY JOHN ROSSER** | |
| **(2) MRS MARIA HELENA GIFFORD** | |
| **(3) MR JAMES BERNARD MOORE (A BANKRUPT)** | |
| **(4) JEFFCOTE DONNISON LLP** | |
| **(5) MR PHILLIP DONNISON** | |
| **(6) MISHCON DE REYA (A FIRM)** | |
| **(7) MR JONATHAN BERMAN** | **Respondents** |

- - - - - - - - - - - - - - - - - - - -

**Mark Phillips QC & Daniel Lewis** (instructed by **Taylor Wessing LLP**) for the **Claimant**
**Lance Ashworth QC & Matthew Morrison** (instructed by **Francis Wilks & Jones**) for the
**First Defendant**
**The Second Defendant** appeared **in Person**
**The Third Defendant** did not appear and was not represented
**Mark Simpson QC, Isabel Barter & Niamh Cleary** (instructed by **DAC Beachcroft LLP**) for
the **Fourth Defendant**
**Edmund Cullen QC & Joseph Farmer** (instructed by **DAC Beachcroft LLP**) for the **Fifth
Defendant**
**Jamie Smith QC & Michael Ryan** (instructed by **DWF LLP**) for the **Sixth and Seventh
Defendants**

Hearing dates: 20, 21, 22, 23,24, 27, 28, 29, 30 November, 4, 5, 6, 7,.8, 11, 18, 19 and 20
December 2017

- - - - - - - - - - - - - - - - - - - -

# Approved Judgment

I direct that pursuant to CPR PD 39A para 6.1 no official shorthand note shall be taken of this
Judgment and that copies of this version as handed down may be treated as authentic.

..............................

THE HONOURABLE MR JUSTICE MORGAN

| Heading | Paragraph number |
|---|---|
| Introduction | 1 |
| The relevant entities and individuals | 8 |
| A comment on the discretionary trusts | 34 |
| Mr Moore | 37 |
| Mr Rosser | 38 |
| Mrs Gifford | 40 |
| Mr Donnison | 42 |
| Mr Berman | 47 |
| Other witnesses | 48 |
| The various agreements involving IAP, Leadenhall and Darrencrest | 49 |
| The agreement dated 24 October 2003 | 50 |
| The agreement dated 26 November 2003 | 55 |
| The agreements dated 26 March 2004 | 59 |
| The agreement between Darrencrest and Maesbury in October 2004 | 63 |
| The agreement dated 7 October 2004 | 64 |
| The agreement dated 4 April 2005 | 65 |
| The agreement dated 5 September 2005 | 66 |
| The agreements dated 1 August 2007 | 67 |
| The agreement dated 28 August 2007 | 71 |
| A summary of the position under the agreements | 72 |
| The evidence | 74 |
| Findings of fact | 76 |
| The matters to be considered | 198 |
| The pleaded case as to breach of the duties of a director | 199 |
| *De facto* and shadow directors | 213 |
| The Claimants' case as to *de facto* and shadow directors | 230 |
| Were Mr Moore and/or Mr Rosser *de facto* and/or shadow directors of IAP? | 235 |
| The duties of a *de jure* director | 252 |
| The duties of a *de facto* director | 254 |
| The duties of a shadow director | 255 |
| Did Mr Moore and/or Mr Rosser owe fiduciary duties to IAP? | 276 |
| The allegation of no or no adequate consideration | 279 |
| The allegation as to obtaining a benefit from a third party by reason of being a director: the law | 309 |
| The allegation as to obtaining a benefit from a third party by reason of being a director: the facts | 315 |
| Conflict of interest in transactions with IAP | 339 |
| Ratification | 358 |
| Negligence | 381 |
| Dishonest assistance of a breach of fiduciary duty | 399 |
| Conspiracy to injure by unlawful means | 402 |
| Section 213 of the Insolvency Act 1986 | 404 |
| Limitation | 416 |
| The overall result | 419 |

*The overall result*

419.  The result of my findings is that the Claimants have not made out any of the claims which they have brought against any Defendant. The claims will therefore be dismissed.

TRULINCS 14532104 - MOORE, JAMES - Unit: PHL-G-S

----------------------------------------------------------------------------------------------------

FROM: Griffin, Mel
TO: 14532104
SUBJECT: RE: thanks..
DATE: 02/19/2021 08:36:05 AM

Hi there I need his prison number and his date of birth cant find anything about him being sentenced cant believe he was given Bail as he had to be arrested in Morocco originally .

I think its extremely exciting that the other codefendant got a shortest sentence I am on the look out for you and if I can help I will .
businessman Renwick Haddow represented by Yasin Patel has been informed that his bail application has been successful. With worldwide freezing orders against him and accused and wanted for fraud internationally including duping investors in a $37 million bitcoin scam, his release is a significant case for al those in non-violent offences and highlights that prisons and detention centres have a duty to protect those in their care and in custody. Currently incarcerated at a New York City Detention Centre, a federal Judge said he will be released on bail citing the danger the British citizen faces from coronavirus.

Regards
Mel
Victims of a $40 million Ponzi scheme hope the sentencing of Bar Works mastermind Renwick Haddow will pave the way for the recovery of lost investments.

The British con man was due to be sentenced in New York City on October 23, three months after his accomplice Savraj Gata-Aura, known as Sam, was sentenced to four years in jail for his role in the hot-desking scam.

{{He was also sentenced to three years of supervised release. The US Department of Justice has delayed sentencing for Haddow until January 22.}}}

Prosecutors said Gata-Aura earned as much as $3m from the con by selling shares in temporary office space in New York and Istanbul that could be leased with profits returned to investors.

I honestly don't think they have sentenced him why have they not sentenced you ???

I hope your baring up to the tremendous strain this must be on you I promise you one thing I believe your an honest trustworthy person and will help you get back on your feet as I did 20 years ago.

Regards

Mel




businessman Renwick Haddow represented by Yasin Patel has been informed that his bail application has been successful. With worldwide freezing orders against him and accused and wanted for fraud internationally including duping investors in a $37 million bitcoin scam, his release is a significant case for al those in non-violent offences and highlights that prisons and detention centres have a duty to protect those in their care and in custody. Currently incarcerated at a New York City Detention Centre, a federal Judge said he will be released on bail citing the danger the British citizen faces from coronavirus.

Victims of a $40 million Ponzi scheme hope the sentencing of Bar Works mastermind Renwick Haddow will pave the way for the recovery of lost investments.

The British con man was due to be sentenced in New York City on October 23, three months after his accomplice Savraj Gata-Aura, known as Sam, was sentenced to four years in jail for his role in the hot-desking scam.

He was also sentenced to three years of supervised release. The US Department of Justice has delayed sentencing for Haddow until January 22.

TRULINCS 14532104 - MOORE, JAMES - Unit: PHL-G-S

---------------------------------------------------------------------------------------------------

Prosecutors said Gata-Aura earned as much as $3m from the con by selling shares in temporary office space in New York and Istanbul that could be leased with profits returned to investors.


JAMES MOORE on 2/18/2021 9:36:31 PM wrote
Thanks Mel - what happened to Haddow? If there is nothing online about is sentence...
If you look him up on BOP.gov it should give you his release date....
Doesn't BOP.gov show where I am? (yes-PA)
Jim
-----Griffin, Mel on 2/18/2021 3:06 PM wrote:

>

British Citizen Sentenced To Four Years In Prison For His Role In Fraudulent Investment Scheme Related To Co-Working Business

Audrey Strauss, the Acting United States Attorney for the Southern District of New York, announced today that SAVRAJ GATA-AURA ("GATA-AURA") was sentenced yesterday to four years in prison for participating in a scheme to defraud more than 800 investors of more than $40 million by making false and fraudulent representations about, among other things, the management, profitability, and operations of a co-working space company called Bar Works Inc.. and related entities ("Bar Works"). GATA-AURA previously pled guilty to conspiracy to commit wire fraud before United States District Judge Jed S. Rakoff, who also imposed the sentence.

Acting U.S. Attorney Audrey Strauss said: "For more than a year-and-a-half, Savraj Gata-Aura lured hundreds of victims to invest approximately $40 million into a massive Ponzi scheme. He concealed from investors that Bar Works was run by Renwick Haddow, who has pled guilty for his role in this and another fraud scheme, instead listing the fictional CEO 'Jonathan Black' in offering documents. By the time the scheme collapsed, Gata-Aura had personally made close to $3 million from unsuspecting investors."

According to the allegations contained in the Superseding Indictment filed against SAVRAJ GATA-AURA and statements made in related court filings and proceedings, including the trial of co-defendant James Moore:

From approximately September 2015 to June 2017, GATA-AURA partnered with Renwick Haddow, who is also a British citizen, in soliciting investments into Bar Works through material misrepresentations concerning, among other things, the identity of Bar Works' management and the financial condition of that company. Previously, Haddow had been disqualified as a director of any U.K. company for eight years, and sued by the Financial Conduct Authority, a British regulator, for operating investment schemes through misrepresentations that lost investors substantially all of their money. These sanctions and lawsuit were publicized extensively online.

In order to conceal his role at Bar Works because of the negative publicity on the internet related to past investment schemes and government sanctions in the United Kingdom, Haddow adopted the alias "Jonathan Black." Notwithstanding Haddow's control over Bar Works, GATA-AURA and others knowingly distributed the Bar Works offering materials listing Black as the chief executive officer of Bar Works and claiming that Black had an extensive background in finance and past success with start-up companies. As GATA-AURA well knew, "Jonathan Black," was an entirely fictitious person, created to mask Haddow's control of Bar Works.

Among other things, GATA-AURA helped devise and distribute pitch materials that contained the misrepresentation, coordinated a substantial sales force to recruit investors knowing that the materials contained the falsehood, advised Haddow as to how to continue to conceal the truth concerning the identity of "Jonathan Black," and affirmatively represented to sub-agents for investors that he was communicating with CEO "Jonathan Black." GATA-AURA and his agent network were directly responsible for raising approximately $40 million from investors in Bar Works. GATA-AURA received in excess of $2.9 million in commissions out of victim funds for his participation in the scheme.

In sentencing GATA-AURA, Judge Rakoff remarked that the defendant "lied, cheated, and as a result many victims were left destitute or deprived of money that was important to them. . . . His primary motivation was greed."

In addition to the prison term, GATA-AURA, 33, was sentenced to three years of supervised release. GATA-AURA was also ordered to pay forfeiture of $2,988,225. The Court will also enter a restitution order at a later date.

TRULINCS 14532104 - MOORE, JAMES - Unit: PHL-G-S

-----------------------------------------------------------------------------------------------------

in related court filings and proceedings, including the trial of co-defendant James Moore:

From approximately September 2015 to June 2017, GATA-AURA partnered with Renwick Haddow, who is also a British citizen, in soliciting investments into Bar Works through material misrepresentations concerning, among other things, the identity of Bar Works' management and the financial condition of that company. Previously, Haddow had been disqualified as a director of any U.K. company for eight years, and sued by the Financial Conduct Authority, a British regulator, for operating investment schemes through misrepresentations that lost investors substantially all of their money. These sanctions and lawsuit were publicized extensively online.

In order to conceal his role at Bar Works because of the negative publicity on the internet related to past investment schemes and government sanctions in the United Kingdom, Haddow adopted the alias "Jonathan Black." Notwithstanding Haddow's control over Bar Works, GATA-AURA and others knowingly distributed the Bar Works offering materials listing Black as the chief executive officer of Bar Works and claiming that Black had an extensive background in finance and past success with start-up companies. As GATA-AURA well knew, "Jonathan Black," was an entirely fictitious person, created to mask Haddow's control of Bar Works.

Among other things, GATA-AURA helped devise and distribute pitch materials that contained the misrepresentation, coordinated a substantial sales force to recruit investors knowing that the materials contained the falsehood, advised Haddow as to how to continue to conceal the truth concerning the identity of "Jonathan Black," and affirmatively represented to sub-agents for investors that he was communicating with CEO "Jonathan Black." GATA-AURA and his agent network were directly responsible for raising approximately \$40 million from investors in Bar Works. GATA-AURA received in excess of \$2.9 million in commissions out of victim funds for his participation in the scheme.

In sentencing GATA-AURA, Judge Rakoff remarked that the defendant "lied, cheated, and as a result many victims were left destitute or deprived of money that was important to them. . . . His primary motivation was greed."

In addition to the prison term, GATA-AURA, 33, was sentenced to three years of supervised release. GATA-AURA was also ordered to pay forfeiture of \$2,988,225. The Court will also enter a restitution order at a later date.

Renwick Haddow, 51, pled guilty on May 23, 2019, to one count each of wire fraud and wire fraud conspiracy relating to the Bar Works scheme, and one count each of wire fraud and wire fraud conspiracy relating to a separate investment scheme involving Bitcoins. Haddow's sentencing is scheduled for October 23, 2020.

James Moore, 58, was convicted of one count of wire fraud and one count of wire fraud conspiracy for his participation in the scheme on June 7, 2019, following a week-long jury trial before Judge Richard M. Berman. Moore's sentencing date is pending.

Ms. Strauss praised the investigative work of the Federal Bureau of Investigation and thanked the Securities and Exchange Commission, which has separately brought civil actions against GATA-AURA, Haddow, and Moore, for its assistance.

This case is being handled by the Office's Securities and Commodities Fraud Task Force. Assistant U.S. Attorneys Vladislav Vainberg and Martin S. Bell are in charge of the prosecution. .

As an innocent partner who has been framed in this ridicules situation and on the prosecutions own statement supposed to have had \$1,500,000 dollars surely with your time served there good be a possibility of a release on sentencing please keep in touch are you still in Philadelphia

Regards

Mel

JAMES MOORE on 2/18/2021 11:22:04 AM wrote
Hi Mel

How are you?

Karina tells me you have been tracking my case - any news? Anything you can tell me?

Thanks \- Jim

TRULINCS  14532104 - MOORE, JAMES - Unit: PHL-G-S

Privilege  waived  JS

FROM: 14532104
TO: Heim, Robert
SUBJECT: Extension/PSR etc
DATE: 04/27/2021 09:27:45 PM

Hi Robert

Thanks for getting back to me on this - I am agreeable to the 30 day extension.

Please forward me a copy of the PSR as soon as you have it.

Thanks - Jim
-----Heim, Robert on 4/27/2021 7:21 PM wrote:

>

Hi Jim,

Sorry for the delay in responding to your email. Michael had major surgery earlier this month and his recovery has been slower than anticipated. Michael was discharged from the hospital and is recovering at home but has not been able to return to work yet.

With your permission Michael would like to ask the Court for a 30 day extension in the due date of the response to the sentencing report. The response is currently due on May 11.

Could you please let me know if you are agreeable to requesting this extension? Thank you.

Robert Heim

JAMES MOORE on 4/19/2021 3:23:35 PM wrote
Michael / Robert

Please send me the copy of the Pre Sentence Report ASAP.

Michael, when will we have our call to prepare for the sentencing memo / hearing?

I'm becoming concerned that time is growing short...Best, Jim

TRULINCS 14532104 - MOORE, JAMES - Unit: PHL-G-S

PRIVILEGE WAIVED (handwritten)

--------------------------------------------------------------------------------

FROM: 14532104
TO: Grudberg, Michael; Heim, Robert
SUBJECT: PSR / Extension etc
DATE: 04/28/2021 07:10:57 AM


Robert/Michael

I've re-thought this overnight.

Is there any way we could meet the existing schedule please?, whilst still making any effective points that need making regarding concurrent vs. consecutive/minor role reduction, etc? (I have my 'historic version' of events fully written up and can have in the mail to you next week - the earliest I can receive my photocopy of the original back in here - it would/should arrive with you around 5/6 or 5/7) - please advise best mailing address.

If not then could we possibly manage with a 14 or 21 day extension rather than 30? I want to minimise any delays wherever possible and get this sentencing behind me.

As always "effectiveness" should be the priority. If you do not believe my comments above are workable, then as a 'last resort' please go with the 30 day extension you suggested.

Thanks again and hopefully Michael you are/is now fully recuperated.

Best as always - Jim