MANDATE

22-283-cr
*United States v. Moore*

1:18-cr-00759-RMB-1

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

    RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

    At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of February, two thousand twenty-four.

PRESENT:
    ROBERT D. SACK,
    REENA RAGGI,
    JOSEPH F. BIANCO,
        *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/25/2024___

UNITED STATES OF AMERICA,

    *Appellee*,

v.                                               22-283-cr

SAVRAJ GATA-AURA, a/k/a SAM AURA,

    *Defendant*,

JAMES MOORE,

    *Defendant-Appellant*.

FOR APPELLEE:                                                                    VLADISLAV VAINBERG, Assistant United States Attorney (Stephen J. Ritchin, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for

|  |  |
|---|---|
|  | the Southern District of New York, New York, New York. |
| FOR DEFENDANT-APPELLANT: | ANDREW LEVCHUK, Andrew Levchuk, Counsellor at Law, LLC, Amherst, Massachusetts. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard M. Berman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on February 1, 2022, is **AFFIRMED**.

Defendant James Moore appeals from a judgment of conviction entered after a jury trial at which he was found guilty of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and wire fraud, in violation of 18 U.S.C. § 1343. The trial evidence established that Moore and his co-conspirator Renwick Haddow planned and implemented a Ponzi scheme involving a coworking space company named Bar Works, falsely representing to investors that the founder and chief executive officer of Bar Works was not Haddow, but a nonexistent individual named "Jonathan Black." Haddow had previously been sued by the Financial Conduct Authority in the United Kingdom for his role in organizing fraudulent investment schemes and therefore had difficulty raising money from investors using his own name. Moore was sentenced principally to 140 months' imprisonment, to be followed by three years' supervised release. On appeal, Moore argues that the district court: (1) improperly admitted evidence of his prior federal conviction for misprision of a felony in connection with another fraud scheme; (2) issued an erroneous jury instruction on conscious avoidance; and (3) committed procedural and substantive errors at sentencing. We assume the parties' familiarity with the underlying facts, procedural history, and

issues on appeal, which we reference only as necessary to explain our decision to affirm.

I.      **Moore's Prior Conviction**

Moore challenges the district court's decision to admit, under Federal Rule of Evidence 404(b), evidence of Moore's prior federal conviction for misprision of a felony, as well as the factual basis for his guilty plea to that offense, which he affirmed during his plea colloquy. The district court concluded that this prior conviction, which involved concealment of fraudulent conduct by his business partner in another real estate investment scheme, was "admissible to prove knowledge, intent, and absence of mistake" because Moore's chief theory at trial was that he "had no intent to defraud and that he along with the investors was himself duped" by Haddow's fraudulent conduct. App'x at 74; *see also* Fed. R. Evid. 404(b)(2).

Under Rule 404(b), evidence of a prior "bad act" of the defendant is admissible for purposes other than proving that a person acted in accordance with a particular character trait. Fed. R. Evid. 404(b)(1). For instance, such evidence may be admissible to "prov[e] . . . intent, . . . knowledge, . . . absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Evidence admitted under Rule 404(b) is also subject to balancing under Rule 403, which permits a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "To determine whether a district court properly admitted other act evidence, the reviewing court considers whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *United States v. McPartland*, 81 F.4th 101, 115 (2d Cir. 2023) (quoting *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004)). We review for

3

abuse of discretion a district court's decision to admit evidence of a defendant's prior act. *United States v. Lyle*, 919 F.3d 716, 735 (2d Cir. 2019). "We review a trial court's evidentiary decisions for abuse of discretion. The standard is demanding: to find such an abuse we must be persuaded that the trial judge ruled in an arbitrary and irrational fashion." *Torcivia v. Suffolk Cnty., N.Y.*, 17 F.4th 342, 365 (2d Cir. 2021) (alteration adopted) (internal quotation marks and citations omitted).

We discern no abuse of discretion in the district court's decision to admit evidence of Moore's prior conviction under Rule 404(b). It is well settled that "[w]here intent to commit the crime charged is clearly at issue, evidence of prior similar acts may be introduced to prove that intent." *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987). In this context, "[e]vidence of other acts need not be identical to the charged conduct to show knowledge or intent pursuant to Rule 404(b), so long as the evidence is relevant in that it provides a reasonable basis for inferring knowledge or intent." *United States v. Cadet*, 664 F.3d 27, 32–33 (2d Cir. 2011). Here, there were material similarities between Moore's involvement in the fraud scheme that was the subject of the prior conviction and his alleged participation in the instant fraud scheme. In particular, the prior conviction involved Moore's participation in a limited partnership called Lake Austin Properties in connection with a real estate development project in Florida, owned and operated by Paul Oxley. In 2009, when Moore learned that Oxley had illegally used down payments from investors to pay commissions even though the funds should have been placed in an escrow account, Moore (as he admitted at his guilty plea) "t[ook] steps to conceal the crime." App'x at 51. Even though Moore contends he had no role in perpetuating the Lake Austin Properties fraud, his knowledge and concealment of Oxley's fraud provided a reasonable basis for the jury to infer that Moore knew of and intended to participate in the fraudulent Bar Works scheme with Haddow.

4

As the district court noted, the probative value of the prior conviction was magnified by Moore's defense in this case, which centered upon his claim that he, like the investors, was tricked by Haddow into believing that Jonathan Black was a real person and that he terminated his relationship with Haddow and Bar Works as soon as he learned of the fraud.  For example, in summation, defense counsel told the jury that "from the inception, Jim Moore believed the materials that he received from Renwick Haddow," Trial Tr. at 787, and contended that Haddow told Moore that Jonathan Black was a real person and Moore believed and relied on that representation.  Defense counsel further argued in summation that Moore was someone who "volunteered and answered all the questions" he was asked by governmental authorities about Bar Works, *id.* at 807, even though the government contended that he had concealed his knowledge of the fraud when he spoke with the Securities and Exchange Commission in August 2016 and with federal agents in February 2017, *id.* at 605, 760, 763.  Thus, it was well within the district court's discretion to conclude that Moore's concealment of Oxley's fraud at Lake Austin Properties was admissible on the critical element of Moore's knowledge and intent, which included the government's burden to prove the absence of good faith.  *See, e.g.*, *United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) ("[The defendant] contended at trial that he neither knew about nor intended to facilitate any securities or wire fraud by producing false audit reports.  [Defendant]'s own defense strategy therefore made evidence of his previous participation in a substantially similar scheme highly probative.").

Moore's challenge to the admission of the evidence under Rule 403 is similarly unavailing.  Although Moore argues that "[t]he passage of time reduced the probative value of this other act evidence," Appellant's Br. at 19, Moore admitted he knew Oxley had committed a crime in the

5

Lake Austin Properties project around 2009, and the indictment here alleges crimes in 2015 and 2016. This passage of time did not undermine the probative value of Moore's similar conduct in connection with each fraudulent scheme. Moreover, Moore's concealment of the Lake Austin Properties fraud did not involve "conduct any more sensational or disturbing" than the alleged Bar Works scheme, *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990), and any potential prejudice was further minimized by the district court's limiting instruction to the jury. *United States v. Bermudez*, 529 F.3d 158, 163 (2d Cir. 2008).

Accordingly, the district court did not abuse its discretion in admitting the prior conviction.

## II. Jury Instruction on Conscious Avoidance

Moore next argues that the district court's jury instruction on conscious avoidance was erroneous because it lacked a sufficient factual predicate and improperly stated the requirements for such a finding.

We review *de novo* a preserved claim of prejudicial error in jury instructions. *See United States v. Fofanah*, 765 F.3d 141, 144–45 (2d Cir. 2014) (per curiam). An "instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015) (internal quotation marks and citation omitted). The government contends that defendant's failure to object contemporaneously to the specific language in the conscious avoidance instruction, as opposed to the instruction in its entirety, warrants our application of the more deferential plain-error standard of review. *See United States v. Marcus*, 560 U.S. 258, 262 (2010). We need not resolve the dispute here because Moore's appeal fails under either standard.

6

First, we find unpersuasive Moore's contention that the conscious avoidance instruction lacked a sufficient factual predicate. A challenge to the factual predicate of a conscious avoidance instruction "is little more than a challenge to the sufficiency of the evidence," on which the defendant "bears a heavy burden" to demonstrate that based on all the evidence, viewed "in the light most favorable to the government," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Aina-Marshall*, 336 F.3d 167, 171 (2d Cir. 2003) (internal quotation marks and citations omitted). Based on the government's evidence at trial—including, *inter alia*, Haddow's testimony that he told Moore that he was falsely posing as Jonathan Black, an email from Moore indicating that he had saved Haddow's email address under the name Jonathan Black, and Moore's email indicating that he believed other individuals needed to be told a "story" to explain Jonathan Black's absence—we cannot conclude that Moore has met this "heavy burden." *Id.* Although the evidence supported a rational inference that Moore had actual knowledge of the fraud, the instruction was properly predicated on circumstantial evidence that also allowed the jury to rationally infer that Moore, at a minimum, was aware of a high probability that Jonathan Black did not exist and attempted to avoid specific knowledge of that fact and, thereby, of the fraud. *See United States v. Lange*, 834 F.3d 58, 78 (2d Cir. 2016) ("[W]here the defendant asserts lack of actual knowledge, the [g]overnment need not choose between an actual knowledge and a conscious avoidance theory because ordinarily the same evidentiary facts that support the government's theory of actual knowledge also raise the inference that he was subjectively aware of a high probability of the existence of illegal conduct and thus properly serve as the factual predicate for the conscious avoidance charge." (alterations adopted) (internal quotation marks and citation omitted)).

Case 22-759, Document 178, 06/17/2024, 3631063, Page 8 of 16

Second, as to his argument that the instruction failed to communicate the proper elements, Moore relies on *United States v. Kaiser*, 609 F.3d 556, 566 (2d Cir. 2010), in which we required that a conscious avoidance instruction communicate "(1) that a jury may infer knowledge of the existence of a particular fact if the defendant is aware of a high probability of its existence, (2) unless the defendant actually believes that it does not exist." However, the district court addressed both elements in its jury instruction. First, it instructed the jury, "if you find beyond a reasonable doubt *that the defendant was aware that there was a high probability* a crime was being committed, but that the defendant acted with deliberate disregard of the facts, you may find the defendant acted knowingly." Trial Tr. at 868 (emphasis added). Second, unlike in *Kaiser*, 609 F.3d at 566, the district court instructed almost immediately thereafter: "[G]ood faith is a complete defense to the charges in this case. If the defendant *believed in good faith* that he was acting properly, *even if he was mistaken in that belief*, and even if someone was injured as a result of his conduct, there would be no crime." *Id.* (emphasis added).

Although Moore suggests that the district court's failure to use the term "actual" in its discussion of good-faith belief in the conscious avoidance instruction warrants reversal, we disagree. To be sure, in *Kaiser* we described the "high probability" and "actual belief" language as "essential." 609 F.3d at 566. However, we also noted that "the language of our prior decisions [does] not have 'talismanic weight,'" and found error in a conscious avoidance instruction that lacked those specific terms only where there was "some risk that the jury could have convicted if it concluded that [the defendant] was merely negligent" and the charge "contained nothing to suggest that actual belief would absolve [the defendant] of culpability." *Id*. Here, unlike in *Kaiser*, the district court's conscious avoidance instruction adequately informed the jury that the defendant

8

did not commit a crime if he "believed in good faith that he was acting properly, even if he was mistaken in that belief," and also emphasized that "the necessary knowledge on the part of the defendant with respect to any particular charge cannot be established by showing that the defendant was careless, negligent, or foolish." Trial Tr. at 868; *see also United States v. Jones*, 278 F. App'x 12, 16–17 (2d Cir. 2008) (summary order) (finding no error where the conscious avoidance and good faith instruction as a whole, even in the absence of the "actual belief" language, "adequately communicated the essential idea that [the defendant] could not be convicted if she did not actually believe she lacked sufficient funds" to pay the checks she used for the alleged crime).[1]

Accordingly, even under *de novo* review, the district court's conscious avoidance instruction was not erroneous.

### III. Sentencing

Moore argues that the district court committed procedural error at sentencing by: (1) mistakenly applying a managerial enhancement under the United States Sentencing Guidelines (the "Guidelines"); (2) erroneously finding him responsible for a loss amount of $57,579,790, rather than $7.5 million, in the Guidelines calculation; (3) failing to consider the significantly lower forty-eight month sentence received by a co-conspirator; and (4) failing to depart downward

---

[1] We also find unpersuasive Moore's argument that "[t]he district court's instructions on conspiracy impermissibly allowed the jury to find that Moore intended to participate in the conspiracy based on conscious avoidance." Appellant's Br. at 26. As in *United States v. Lange*, 834 F.3d 58, 77 (2d Cir. 2016), considering the conscious avoidance instruction in the context of the instructions on the elements of conspiracy as a whole, we conclude that the district court's "instructions required the jury to find that [Moore] intentionally joined the conspiracy to convict, and accordingly, the instructions did not allow the jury to infer intent from mere conscious avoidance." *See also United States v. George*, 779 F.3d 113, 117 (2d Cir. 2015) ("[W]e do not review a challenged instruction in isolation. Rather, we consider it in context to determine whether considered as a whole, the instructions adequately communicated the essential ideas to the jury." (internal quotation marks and citation omitted)).

9

in determining Moore's criminal history category. Moore further contends that the district court imposed an excessive and substantively unreasonable sentence.

This Court "review[s] the procedural and substantive reasonableness of a sentence under a deferential abuse-of-discretion standard." *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (per curiam). With respect to challenges to the district court's Guidelines calculations, we specifically review the "district court's application of the Guidelines *de novo*" and the "factual determinations underlying [its] Guidelines calculation . . . for clear error." *United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015).

### A. Managerial Enhancement

Moore asserts that the district court erred in applying a three-level upward adjustment for his role as a manager or supervisor of the Bar Works scheme pursuant to U.S.S.G. § 3B1.1(b). The role enhancement applies "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). "To qualify for the enhancement, a defendant need only manage or supervise one other participant, and may properly be considered a manager or supervisor 'if he exercised some degree of control over others involved in the commission of the offense.'" *United States v. Pristell*, 941 F.3d 44, 50 (2d Cir. 2019) (quoting *United States v. Birkin*, 366 F.3d 95, 101 (2d Cir. 2004)).[2]

---

[2] The criminal activity itself must also involve five or more participants, with "participant" defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted," U.S.S.G. § 3B1.1, comment. (n.1), or be "otherwise extensive" in view of "all persons involved during the course of the entire offense," *id.* (n.3). Moore does not dispute this element.

10

We find no clear error in the district court's factual determination, based on the evidence at trial, that "Moore played a significant role in recruiting and/or supervising lower level participants." Sentencing Tr. at 16. Moore recruited United Property Group ("UPG"), an investment sales company with which he was affiliated, to market the scheme; a former U.K. diplomat, Neil Storey, to lend his good reputation to their publicity efforts in exchange for Moore giving Storey "a piece of the action," Trial Tr. at 271; and an individual named Sean Phillips to come to New York to consult for Bar Works, including creating promotional materials, for which he was paid. Moore controlled UPG's participation to a sufficient degree that, after Moore and Haddow had a personal falling-out, UPG entirely ceased marketing the Bar Works scheme. Finally, Moore's role is supported by his substantial equity interest in Bar Works's business. As Haddow testified, Moore "wasn't interested in just getting agents onboard and being paid a flat commission. He was interested in a partnership." *Id.* at 258. This evidence adequately supports the district court's factual conclusion. *See United States v. Diamreyan*, 684 F.3d 305, 309 (2d Cir. 2012) (per curiam); *Pristell*, 941 F.3d at 50–51. Moreover, because the Guidelines contemplate an organization having both an individual who is "an organizer or leader" and an individual who is "a manager or supervisor (but not an organizer or leader)," U.S.S.G. § 3B1.1, Moore's argument that "Haddow was fully in control . . . and Moore was manifestly subordinate" to Haddow is unavailing, as the evidence supports a conclusion that Moore managed or supervised other participants, even assuming *arguendo* that Moore himself was subordinate to Haddow in the scheme's hierarchy. Appellant's Reply Br. at 14–15.

11

### B. Loss Amount

In fraud cases, the Guidelines provide for sentencing enhancements based on the amount of loss, defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 comment. (n.3(A)(i)); *see also* U.S.S.G. § 2B1.1(b)(1). Loss resulting from the acts of others is attributable to a defendant when "a district court [finds] 1) that the acts were within the scope of the defendant's agreement and 2) that they were foreseeable to the defendant." *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995). Moore challenges his twenty-two-level enhancement for a total loss amount of $57,579,790, arguing instead that it should be an eighteen-level enhancement for the loss of $7.5 million, which he claims represents the amount that was within the scope of his agreement and foreseeable to him. Specifically, Moore argues that he should not be held responsible for sales made after Moore's falling-out with Haddow in early 2015, and that the bulk of the loss amount attributable to Bar Works was the result of "sales . . . made without his knowledge by [Savraj Gata-Aura a.k.a.] Sam Aura, who was in competition with Moore and who undercut Moore at every opportunity." Appellant's Reply Br. at 16–17.

In calculating the loss amount on a fraud conspiracy, a district court may include the total loss attributable to the conspiracy, even when the defendant did not actively participate in the conspiracy for a substantial part of its duration, if the defendant did not affirmatively withdraw from the conspiracy. *United States v. Leslie*, 658 F.3d 140, 142 (2d Cir. 2011) (per curiam) (affirming loss amount of entire thirty-two month conspiracy although defendant was placed in custody three months into the conspiracy and for most of the remaining period, during which time "his co-conspirators continued the scheme"). At sentencing, as at trial, the defendant bears the burden of proving that he or she withdrew from the conspiracy, and "mere cessation of

12

conspiratorial activity is not sufficient" to establish such withdrawal. *Id.* at 144–45. Moore, like the defendant in *Leslie*, played a central role in devising and executing the fraud, *id.* at 144, including by creating offering materials that he knew would be used by other marketing agents. Even assuming that Moore at some point "resign[ed] from [the] criminal enterprise," he "never told the authorities how to stop the conspiracy nor did he inform the authorities or his co-conspirators that he had abandoned the conspiracy." *Id.* Accordingly, we find no clear error in the calculation of the loss amount.

### C. Co-Conspirator's Sentence

Moore contends that the district court erred in imposing a longer sentence than the forty-eight month sentence imposed by another judge on co-conspirator Aura following Aura's guilty plea. He argues that "[i]n determining a just and reasonable sentence for Moore[,] the district court should have considered the relative roles played by the two with respect to Renwick Haddow's operation." Appellant's Br. at 31. Section 3553(a)(6) requires the district court "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, Moore's argument fails for two reasons. First, Section 3553(a)(6) requires the "district court to consider *nationwide* sentence disparities, . . . not . . . disparities between co-defendants," *United States v. Bryant*, 976 F.3d 165, 180 (2d Cir. 2020) (internal quotation marks and citation omitted), or co-conspirators, *United States v. Gahagen*, 44 F.4th 99, 113 (2d Cir. 2022). Second, the district court was aware of, and explicitly considered, the "significant difference between Mr. Moore and Mr. Aura's case," Sentencing Tr. at 7, and Moore's sentencing submission raised the difference in the Guidelines

13

calculation between Moore and Aura.  In short, there was no procedural error with regard to consideration of co-conspirator Aura's sentence.

### D.     Moore's Criminal History Category

Moore argues that his Criminal History classification of Category II for his prior conviction of misprision of a felony "overstated the seriousness of his past criminal record" and the district court should therefore have departed downward, to Category I.  Appellant's Br. at 39.  However, in cases where "there is no indication that [the district court] mistakenly believed [it] lacked the authority to depart as a matter of law," its "refusal to downwardly depart is not reviewable on appeal."  *United States v. Desena*, 260 F.3d 150, 159 (2d Cir. 2001).  No such indication exists here.  Moore included in his sentencing submission dated October 13, 2021 a written request for a downward departure in the calculation of his Criminal History Category, and although the district court did not specifically comment on Moore's request with respect to his classification, the district court noted generally at sentencing the contents of that submission and gave no indication that it believed it lacked authority to so depart.  *See United States v. Scott*, 387 F.3d 139, 143 (2d Cir. 2004) ("A district court's silence concerning its refusal to depart downward, generally, does not support an inference that the district court misapprehended its scope of authority.").  Thus, the district court's decision not to depart downward in determining Moore's Criminal History Category is unreviewable.

### E.     Substantive Unreasonableness

Finally, Moore challenges his 140-month sentence, which was significantly below his Guidelines range of 262 to 327 months' imprisonment, as substantively unreasonable.  Our "review of a sentence for substantive reasonableness is particularly deferential."  *United States v.*

14

*Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). We "set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions," *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks and citation omitted), such as when it is "so shockingly high . . . or otherwise unsupportable as a matter of law that allowing [it] to stand would damage the administration of justice," *Broxmeyer*, 699 F.3d at 289 (internal quotation marks and citation omitted). Where, as here, the sentence imposed is below the Guidelines range, "[i]t is . . . difficult to find that [it] is unreasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (per curiam) (2d Cir. 2011).

The district court carefully considered the Section 3553(a) factors in imposing the sentence. Moore does not suggest otherwise. Instead, his primary argument in support of this claim is that his sentence is unreasonable in comparison with co-conspirator Aura's sentence. Specifically, Moore contends that Aura's forty-eight month sentence "should have . . . marked the upward range of . . . punishment for Moore." Appellant's Br. at 32. We disagree. Again putting aside that Section 3553(a)(6) does not even require a district court to consider disparities between co-conspirators, *see supra*, the district court did consider Aura's sentence, and Moore's sentence was not "shockingly high" just because it substantially exceeded Aura's. *Broxmeyer*, 699 F.3d at 289. As noted by the government, there were several dissimilarities between Moore and Aura warranting the varying sentences, including that: (1) "Aura made efforts to cooperate with the [g]overnment and provided extensive financial information pertaining to the victims of the scheme to aid the [g]overnment's forfeiture efforts," while Moore did not, D. Ct. Dkt. 149 at 5 n.2; (2) Aura had no prior criminal history, while Moore had a prior conviction; (3) Aura's

15

Guidelines range was 97 to 121 months, while Moore's range was 262 to 327 months; and (4) although Aura ultimately oversaw a greater number of investments than Moore, those investments were derived from offering documents designed with Moore's assistance.

In sum, Moore's below-Guidelines sentence is not the "exceptional case[] where the trial court's decision cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (internal quotation marks and citation omitted). Therefore, we conclude that the sentence is substantively reasonable.

*     *     *

We have considered Moore's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit